USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/3/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Kevin Natrella,

        **Plaintiff,**

   -against-

Commissioner of Social Security,

        **Defendant.**

1:19-cv-01237 (SDA)

OPINION AND ORDER

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

On February 8, 2019, Plaintiff Kevin Natrella ("Plaintiff" or "Natrella") filed this action pursuant to § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), and § 1631(c)(3) of the Act, 42 U.S.C. § 1383(c)(3), challenging the final decision of the Commissioner of Social Security, denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Compl., ECF No. 2.) Presently before the Court are the parties' cross-motions for judgment on the pleadings. (*See* Comm'r Notice of Mot., ECF No. 18; Pl.'s Notice of Mot., ECF No. 24.) For the reasons set forth below, Plaintiff's motion is DENIED and the Commissioner's cross-motion is GRANTED.

BACKGROUND

**I. Procedural History**

Natrella filed applications for SSI and DIB[1] on November 6, 2015 and November 9, 2015, respectively, alleging a disability onset date of August 19, 2014. (Administrative R. ("R."), ECF No.

---

[1] To qualify for disability insurance benefits, a claimant must be both disabled and insured for benefits. 42 U.S.C. § 423(a)(1)(A) & (C); 20 C.F.R. §§ 404.101, 404.120 & 404.315(a). The last date a person meets these requirements is commonly referred to as the date last insured ("DLI"). Natrella's DLI is September 30, 2016. (R. 13-14.)

13, 360, 367.) The Social Security Administration ("SSA") denied Natrella's applications on February 1, 2016 and Natrella requested a hearing before an Administrative Law Judge ("ALJ"). (R. 293-95.) A video hearing was held before ALJ Michael Stacchini on December 19, 2017. (R. 143-78.) In a decision dated March 27, 2018, ALJ Stacchini found that Natrella was not disabled. (R. 13-26.) On April 5, 2018, Natrella requested review of the ALJ's decision by the Appeals Council. (R. 357.) ALJ Stacchini's decision became the Commissioner's final decision when the Appeals Council denied Natrella's request for review on January 3, 2019. (R. 1-7.) This action followed.

## II.     The Administrative Record

Plaintiff incorporates by reference the evidence set forth in the Commissioner's memorandum of law, adding only a few additional references to medical evidence. (Pl.'s Mem. In Support Mot. For J. On The Pleadings ("Pl.'s Mem."), ECF No. 25, at 1 (citing Comm'r Mem. In Support Cross-Mot. For J. On The Pleadings ("Comm'r Mem."), ECF No. 19, at 2-16); *see also id.* at 1-4 (discussing medical evidence).) Thus, having carefully examined the administrative record, the Court adopts the Commissioner's summary, as incorporated and supplemented by Plaintiff, as accurate and complete for the purposes of considering the claims at issue in this action. *Accord MacLean v. Comm'r of Soc. Sec.*, No. 16-CV-03270 (GWG), 2017 WL 4082797, at *1 (S.D.N.Y. Sept. 14, 2017) (adopting Commissioner's summary of evidence). The Court discusses the portions of the record relevant to this case's disposition in the Discussion Section below.

## III.    The December 19, 2017 Administrative Hearing

At the administrative hearing on December 19, 2017, Natrella testified that he did not get along with his roommate and that, other than his former girlfriend and friend, Tina, he did not

really get along with other people. (R. 148.) Natrella testified that Tina cleaned for him, brought him food and helped him with shopping. (R. 148-49, 156.) Natrella testified that he used to go to the gym, but stopped because he could not "deal with people anymore." (R. 150.) He also testified that he had some arguments with people at the gym and previously had been kicked out. (R. 167.) Natrella testified that he attended Alcoholic Anonymous ("AA") meetings at least five times per week and that he got along well with his sponsor. (R. 152-53.) Natrella described his symptoms as a "panic-like mode" and testified that he felt nervous and couldn't focus. (R. 158-59.) Natrella described the partial hospitalization program he participated in at St. Vincent's as "horrible" and explained that he "closed down." (R. 159-60.)

Natrella testified that he dropped out of high school in ninth or tenth grade. (R. 166.) Later, he took three classes at a trade school, but testified that he failed out of them because he could not focus and got into a fight with one of the teachers. (*Id.*) As for his prior work, Natrella testified that he worked as a janitor at a factory and as a commercial truck driver. (R. 164-65.) Natrella testified that he was laid off from the job as a janitor after he got into a yelling match with the owner. (R. 167-68.) Since then, Natrella testified that he tried to work once, but was fired after getting into a fight. (R. 154-44, 170.)

Vocational expert ("VE") Linda Stein also testified at the hearing. (R. 171-76.) The ALJ asked the VE to assume a hypothetical person with the same age, education and work experience as Natrella and limited to the full range of light work with the following additional limitations: occasional exposure to atmospheric conditions; avoidance of unprotected heights and hazardous machinery; limited to understanding, remembering and carrying out simple, routine tasks in a low-stress job, defined as one involving decision-making and changes in work setting relating to

3

simple, routine tasks with occasional interaction with the general public, coworkers and supervisors. (R. 172-73.) The VE testified that such hypothetical person could perform the jobs of inspector/hand packager and assembler of small products II (non-assembly line), as well as cleaner/polisher in any industry. (R. 173.) The VE further testified that all three of the jobs she identified related primarily to handling things and, thus, required very little interaction with other people. (R. 175-76.) The ALJ also asked if the hypothetical person was further limited to be off-task for twenty percent of the work period in addition to regularly scheduled breaks, if that would preclude all work, to which the VE responded that it would. (R. 174.) Finally, the VE testified that, if an individual would miss three days off per month, it would preclude all of the jobs she identified. (R. 176.)

### IV. ALJ Stacchini's Decision And Appeals Council Review

Following the five-step process, *see infra* Legal Standards Section II, ALJ Stacchini determined that Natrella did not have a disability within the meaning of the Act. (R. 13-26.) The ALJ found at step one that Natrella had not engaged in substantial gainful activity during the period from his alleged onset date to the date of the ALJ's decision. (R. 16.) At step two, the ALJ determined that Natrella had the following severe impairments: post-traumatic stress disorder, anxiety disorder, bipolar disorder, polysubstance abuse in remission, chronic obstructive pulmonary disease ("COPD"), obesity and obstructive sleep apnea. (*Id.*) The ALJ also found that Natrella was non-severely impaired by gastroesophageal reflux disease. (*Id.*)

At step three, the ALJ found that Natrella did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16-17.) In making this decision, the ALJ considered Listing 12.04

4

for depressive, bipolar and related disorders and Listing 12.06 for anxiety and obsessive-compulsive disorders and the "paragraph B" and "paragraph C" criteria applicable to both Listings.[2] (*Id.*) The ALJ determined that Natrella had a moderate limitation in each of the broad areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. (*Id.*) Thus, the ALJ determined that Natrella did not meet the "paragraph B" criteria. (*Id.*) The ALJ also concluded that the evidence failed to establish the presence of the "paragraph C" criteria.[3] (R. 17.)

Having found that Natrella did not meet or medically equal any of the Listings, the ALJ assessed Natrella's Residual Functional Capacity ("RFC") and determined that he was able to perform light work, except that he was limited to occasional atmospheric conditions; no unprotected heights or hazardous machinery; and understanding, remembering and carrying out simple routine tasks in a low stress job (defined as having changes in a work setting and decision-making related to simple routine tasks with occasional interactions with the general public, coworkers and supervisors). (*Id.*) In reaching this assessment, the ALJ considered treatment notes

---

[2] The paragraph B criteria "represent the areas of mental functioning a person uses in a work setting." 20 C.F.R. § 404, Subpt. P, App'x 1. They are: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id.* To satisfy the paragraph B criteria, a claimant's mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. *Id.*

[3] Paragraph C of Listings 12.04 and 12.06, among others, provides the criteria used to evaluate "serious and persistent mental disorders." 20 C.F.R. § 404, Subpt. P, App'x 1. To satisfy the paragraph C criteria, there must be "a medically documented history of the existence of the claimant's mental disorder over a period of at least two years, and evidence of both: (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the claimant's] mental disorder," and "(2) marginal adjustment," *i.e.*, "minimal capacity to adapt to changes in [the claimant's] environment or to demands that are not already part of [the claimant's] daily life." *See id.*

5

and opinions from Natrella's treating physicians, including his primary care physician Dr. Montoya and treating pulmonologist, Dr. Brill, along with mental health treatments notes from his mental health providers and partial hospitalization program at St. Vincent's, and opinion evidence from his mental health counselor, Lindsay March. (R. 17-24.) In addition, the ALJ considered opinion evidence from a consultative internist, Dr. Kaci; consultative psychologist, Dr. Antiaris; State agency psychological consultant, Dr. Brandt; and an employability assessment completed by psychologist Alan Dubro for the Westchester Department of Social Services. (*Id.*)

Based on this RFC, the ALJ concluded at step four that Natrella could not perform any past relevant work, all of which was performed at the medium exertional level. (R. 24) Proceeding to step five, the ALJ found that Natrella could perform other jobs in the national economy including inspector, assembler small products II and cleaner/polisher. (R. 25.) Thus, the ALJ concluded that Natrella was not disabled. (R. 25.)

Following the ALJ's March 27, 2018 decision, Natrella sought review from the Appeals Council, which denied his request on January 3, 2019. (R. 1-7.) In denying review, the Appeals Council considered additional evidence submitted by Natrella, but determined that the evidence either was duplicative or did not relate to the time period at issue. (R. 2.)

**LEGAL STANDARDS**

I. **Standard Of Review**

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The Court first reviews the Commissioner's decision for compliance with the correct legal standards;

only then does [the Court] determine whether the Commissioner's conclusions were supported by substantial evidence." *Ulloa v. Colvin*, No. 13-CV-04518 (ER), 2015 WL 110079, at *6 (S.D.N.Y. Jan. 7, 2015) (citing *Tejeda v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision[.]" *Id.*; *accord Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

Absent legal error, the ALJ's disability determination only may be set aside if it is not supported by substantial evidence. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (vacating and remanding ALJ's decision). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "The substantial evidence standard is a very deferential standard of review—even more so than the clearly erroneous standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder *would have to conclude otherwise*." *Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019) (summary order) (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original) (internal quotation marks omitted)). If the findings of the Commissioner as to any fact are supported by substantial evidence, those findings are conclusive. *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995).

**II.     Determination Of Disability**

A person is considered disabled for benefits purposes when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

> An individual shall be determined to be under a disability only if [the combined effects of] [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do his previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether an individual is disabled, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).

The Commissioner's regulations set forth a five-step sequence to be used in evaluating disability claims:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . [continuous period of 12 months], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 ["Listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

If it is determined that the claimant is or is not disabled at any step of the evaluation process, the evaluation will not progress to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). After the first three steps (assuming that the claimant's impairments do not meet or medically equal any of the Listings), the Commissioner is required to assess the claimant's RFC "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 405.1545(a)(1).

The claimant bears the burden of proof as to the first four steps. *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). It is only after the claimant proves that she cannot return to work that the burden shifts to the Commissioner to show, at step five, that other work exists in the national and local economies that the claimant can perform, given the claimant's RFC, age, education and past relevant work experience. *Id.* at 51

### DISCUSSION

Plaintiff asserts that the decision of the Commissioner was not based upon a full and fair evaluation of the entire record, not supported by substantial evidence and reached through material error. (Pl.'s Mem. at 4.) In support of his motion, Plaintiff sets forth a litany of legal principles with little to no analysis as to their applicability to the instant action. (*Id.* at 4-9.) Plaintiff appears to argue that the ALJ failed to adequately develop the record; erred in weighing

9

the opinion evidence in the record; improperly discounted Plaintiff's credibility and that the ALJ's RFC determination is not supported by substantial evidence. (*Id.*) In his cross-motion, the Commissioner argues that the ALJ's decision is legally correct and supported by substantial evidence. (Comm'r Mem. at 19-30.) For the reasons set forth below, the Court agrees with the Commissioner.

I. **The ALJ Did Not Err By Failing To Develop The Record**

First, the Court finds no merit in Plaintiff's claim that the ALJ failed to adequately develop the record. (Pl.'s Mem. at 6, 8.) Plaintiff does not identify any "obvious gaps" in the record and, upon review, the Court finds none. *Rosa*, 168 F.3d at 79 n.5. As set forth in the parties' recitation of the relevant medical evidence, the ALJ had before him several years' worth of treatment records, as well as opinion evidence from multiple sources including Natrella's primary care physician, mental health counselor and consultative examiners. (*See* Comm'r Mem. at 2-14; Pl.'s Mem. at 1-4.) Thus, the Court finds that the ALJ did not err by failing to develop the record. *See Lowry v. Astrue*, 474 F. App'x 801, 804 (2d Cir. 2012) (summary order) ("Although an ALJ has an affirmative duty to develop the administrative record . . . where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim") (internal quotation marks and citations omitted).

II. **The ALJ Did Not Err In Weighing The Opinion Evidence**

Next, Plaintiff appears to argue that the ALJ erred in weighing the opinion evidence in the record. (Pl.'s Mem. at 7.) Plaintiff does not identify any particular opinions that he contends the ALJ improperly weighed, but appears to take issue with the ALJ's treatment of the opinion

evidence from Licensed Mental Health Counselor ("LMHC") March and, in particular, her opinion that Natrella had an extreme limitation in interacting appropriately with others. (*See id.*)

The Court notes that all of the mental health providers who treated Natrella on a sustained basis were mental health counselors or psychiatric nurse practitioners and thus not considered "acceptable medical sources" under the SSA's regulations in effect at the time.[4] *See* 20 C.F.R. §§ 404.1513, 416.913. As such, their opinions, including the opinions of LMHC March, were not entitled to controlling weight. *See* 20 C.F.R. §§ 404.1527(f), 416.927 (versions in effect for claims filed before March 27, 2017), *see also Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order) (nurse practitioner's opinion not entitled to controlling weight). Nonetheless, the SSA has explained that opinions from "other sources," are "important and should be evaluated on key issues such as impairment severity and functional effects" and that, in evaluating the opinions of "other source[s,]" the ALJ should apply the same factors used in considering the opinions of acceptable medical sources,[5] though not every factor will apply in every case. *See* SSR 06-03p, 2006 WL 2329939 at **3-5.

---

[4] On January 18, 2017, the SSA promulgated a final rule that dramatically changes the nature of the evaluation of medical opinion evidence. Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence, 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404 & 416). These new regulations apply only to claims filed with the SSA on or after March 27, 2017. Accordingly, because Natrella's claims were filed before that date, to the extent that the regulations regarding medical opinion evidence are cited in this Opinion & Order, the Court is referring to the version of the regulations effective before March 27, 2017.

[5] Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the source is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See* 20 C.F.R. §§ 404.1527, 416.927.

The Court is mindful that the opinions of other medical sources are particularly important where the other source's opinion is the "sole [treating] source that had a regular treatment relationship with the plaintiff." *Hernandez v. Astrue*, 814 F. Supp. 2d 168, 182 (E.D.N.Y. 2011) (internal citations omitted). However, because LMHC March is not a treating physician, her opinion is not entitled to the same deference under the regulations. *See Mongeur,* 722 F.2d at 1039 n.2 (citing *Genier*, 298 F. App'x at 108 ("the diagnosis of a nurse practitioner should not be given the extra weight accorded a treating physician.")). Instead, the ALJ was required to explain the weight given to the opinion or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow his reasoning. *See* 20 C.F.R. §§ 404.1527(f), 416.927(f).

Here, the ALJ discussed the length, frequency and nature of the treatment relationship and the consistency of LMHC March's opinions with other evidence in the record. (R. 21-22.) The ALJ also discussed his reasons for assigning LMHC March's opinions little weight, including that they were inconsistent with other evidence in the record such as the opinion of the consultative psychologist and contemporaneous treatment notes.[6] (*Id.*) The Court also notes that, despite assigning little weight to LMHC March's opinions, the ALJ seems to have incorporated them into his RFC assessment, which limited Natrella to only occasional interaction with supervisors, co-workers and the public. (R. 17.) Thus, the ALJ's RFC determination reflects at least a moderate, if not greater, limitation in Natrella's ability to interact with others. *See, e.g., Laughlan v. Comm'r of Soc. Sec.*, No. 17-CV-01055, 2019 WL 2723417, at *2 (W.D.N.Y. July 1, 2019) (occasional contact

---

[6] While the ALJ did not specifically address LMHC March's August 2017 opinion (*see* R. 665-66), the Court agrees with the Commissioner that any error is harmless, as the opinion was consistent with the other opinions addressed by the ALJ. (Comm'r Mem. at 25-26.)

with co-workers and supervisors properly rated as moderate limitation in social functioning); *Juliana Marie M. v. Comm'r of Soc. Sec.*, No. 18-CV-01421 (ATB), 2019 WL 6829044, at *10 (N.D.N.Y. Dec. 13, 2019) (limitation to work requiring no more than occasional interaction with public and co-workers adequately accounted for marked limitation in social functioning).

For these reasons, the Court finds that the ALJ did not err in weighing the opinion evidence.

III. **The ALJ Properly Considered Plaintiff's Subjective Complaints**

To the extent that Plaintiff challenges the ALJ's credibility determination (Pl.'s Mem. at 6), the Court finds that the ALJ applied the correct legal standard and that his determination is supported by substantial evidence. Following the two-step process outlined by the regulations, *see* 20 C.F.R. §§ 404.1529, 416.929, the ALJ determined that Natrella's impairments could reasonably be expected to cause his alleged symptoms, but that Natrella's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence in the record. (R. 22.) The ALJ also discussed relevant factors such as Natrella's activities of daily living and course of treatment. *See* 20 CFR §§ 404.1529(c), 416.929(c). In particular, the ALJ acknowledged that Natrella reported difficulty in interacting with others, but cited to evidence of his daily activities and ability to attend AA meetings in support of his conclusion that Natrella retained the ability to occasionally interact with others in a work setting. (R. 23-24.) Natrella also reported side effects from medications, but the ALJ determined that this testimony was not consistent with Natrella's medical records, wherein he consistently denied experiencing such side effects. (R. 24; *see also, e.g.*, R. 834.) The ALJ's credibility determination is entitled to deference. *See Soltis v. Berryhill*, No. 18-CV-00490 (HBP), 2019 WL 1324415, at *19

(S.D.N.Y. Mar. 25, 2019) (citing *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) ("After all, the ALJ is in a better position to decide issues of credibility.")). Thus, the Court finds that the ALJ properly considered Plaintiff's subject complaints in making his RFC determination.

IV.     **The ALJ's RFC Determination Is Supported By Substantial Evidence**

The ALJ determined that Natrella could perform light work with limited atmospheric conditions and no unprotected heights on hazardous machinery and was limited to understanding, remembering and carrying out simple routine tasks in a low stress job (defined as having changes in a routine setting and decision-making related to simple routine tasks with occasional interaction with the general public, coworkers and supervisors). (R. 17.) The Court finds that the ALJ's RFC determination is supported by substantial evidence.

As for Natrella's physical limitations, the ALJ discussed treatment records from Natrella's treating physicians regarding his COPD and related symptoms but noted that Natrella still smoked despite his COPD and that Natrella had worked with that condition in the past, which indicated some ability to be in the presence of pulmonary irritants. (R. 18-21, 23.) The ALJ also considered medical records from Plaintiff's treating physicians as well as the opinion of consultative internist, Dr. Kaci, who opined that Natrella had moderate limitations in heavy physical exertion due to emphysema. (R. 18-21.) The ALJ took this opinion into account by limiting Natrella to light work. (R. 19.)

Further, based on Natrella's mental impairments, the ALJ considered the medical evidence and opinion evidence in the record. (R. 18-24.) The ALJ concluded that Natrella had a moderate limitation in interacting with others based on evidence that Natrella had a few close friends and attended AA meetings and that he was "largely cooperative with appropriate eye

14

contact with medical professionals." (R. 16; *see also* R. 17 (RFC assessment reflected degree of limitation from "paragraph b" criteria).) This evidence supports the ALJ's conclusion that Natrella retained some ability to interact with others. *See, e.g., Lovell v. Colvin*, 137 F. Supp. 3d 347, 352 (W.D.N.Y. 2015) (substantial evidence supported ALJ's finding that plaintiff had moderate difficulties in social functioning when, *inter alia*, plaintiff interacted appropriately with medical personnel during examinations); s*ee also Rhineer v. Comm'r of Soc. Sec.*, No. 18-CV-00362 (FPG), 2020 WL 581870, at *3 (W.D.N.Y. Feb. 6, 2020) (RFC limiting plaintiff to occasional interaction with supervisors and co-workers and no interaction with public supported by substantial evidence when plaintiff could handle at least some social interaction).

The ALJ's decision also is supported by the opinion of the State agency psychological consultant, Dr. Brandt, and the opinion of consultative psychologist, Dr. Antiaris. (R. 19-20.) The Court notes that these opinions were given in 2015, over two years prior to the ALJ's decision. However, Plaintiff does not argue, nor does the record reflect, that there was a significant deterioration in Plaintiff's condition, such that the opinions were rendered stale. *See Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018) ("A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age."). While there is evidence in the record that also could support a greater limitation in terms of Natrella's ability to interact with others, the Court cannot say that a reasonable factfinder would have to reach a different conclusion from the ALJ. *See Banyai*, 767 F. App'x at 177 (Commissioner's findings of fact must be upheld unless reasonable factfinder "would have to conclude otherwise"); *see also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the

factfinder."). In sum, the Court finds that the ALJ properly considered the available evidence "to make RFC finding that was consistent with the record as a whole" and thus finds no basis to disturb the ALJ's decision. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is DENIED and the Commissioner's cross-motion is GRANTED.

DATED: March 3, 2020
New York, New York

_____
**STEWART D. AARON**
**United States Magistrate Judge**